1  KAREN P. HEWITT
   United States Attorney
2  CHRISTINA M. McCALL
   Assistant United States Attorney
3  California Bar Number 234139
   Federal Office Building
4  880 Front Street, Room 6293
   San Diego, California 92101-8893
5  Telephone: (619) 557-6760
   Facsimile: (619) 235-2757
6
   Attorneys for Plaintiff
7  United States of America

8  **UNITED STATES DISTRICT COURT**

9  **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 UNITED STATES OF AMERICA,              )    Criminal Case No. 08CR1169-WQH
                                           )
12                                         )    **UNITED STATES' MOTIONS IN**
                                           )    **LIMINE TO:**
13               Plaintiff,                )
                                           )    **(1)   ADMIT A-FILE DOCUMENTS**
14                                         )    **(2)   INTRODUCE EXPERT**
          v.                               )          **TESTIMONY**
15                                         )    **(3)   PROHIBIT REFERENCE TO**
                                           )          **REASON WHY DEFENDANT**
16                                         )          **REENTERED U.S.**
   MIGUEL MENDIOLA-MARTINEZ,               )    **(4)   PROHIBIT REFERENCE TO**
17                                         )          **PRIOR RESIDENCY**
                                           )    **(5)   PROHIBIT REFERENCE TO**
18                                         )          **POTENTIAL PUNISHMENT**
                                           )    **(6)   EXCLUDE WITNESSES**
19               Defendant.                )    **(7)   PRECLUDE DEFENSE EXPERT**
                                           )          **WITNESSES**
20                                         )    **(8)   ADMIT EVIDENCE OF**
                                           )          **DEFENDANT'S 1999**
21 _____)          **APPREHENSION**
                                                **(9)   PRECLUDE DURESS DEFENSE**
22                                                    **OR NECESSITY DEFENSE**
                                                **(10)  COMPEL RECIPROCAL**
23                                                    **DISCOVERY**
                                                **(11)  PERMIT THE GOVERNMENT TO**
24                                                    **BRING FIREARMS INTO THE**
                                                      **COURTHOUSE**
25                                              **(12)  PRECLUDE DEFENDANT FROM**
                                                      **ARGUING THAT AN**
26                                                    **APPLICATION FOR**
                                                      **ADJUSTMENT OF STATUS**
27                                                    **MAKES HIM A LAWFUL**
                                                      **RESIDENT**
28
                                                Date:    August 11, 2008
                                                Time:    2:00 p.m.

Honorable:   William Q. Hayes

Plaintiff, United States of America, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its Motions in Limine. These motions are based upon the files and records of the case together with the attached statement of facts and memorandum of points and authorities.

## I.

## STATEMENT OF FACTS

On April 9, 2007, Special Agent Matt Beals of the Bureau of Alcohol, Tobacco and Firearms ("ATF") debriefed a confidential informant about firearms possessed by Defendant. The informant stated that Defendant had purchased at least two firearms from the informant in the past 18 months. The informant identified Defendant from his photograph from the California Department of Motor Vehicles driver's license database. A check of Defendant's criminal and immigration history revealed that he was arrested by the Immigration and Naturalization Service for attempted illegal entry into the United States on April 15, 1999, and expeditiously removed from the country. A check of immigration records revealed that Defendant did not have lawful permission to reenter the United States following his removal.

On March 17, 2008, ATF and Immigration and Customs Enforcement agents interviewed Defendant at his residence, after Defendant waived his <u>Miranda</u> rights. Defendant confirmed that he was unlawfully present in the United States, having illegally entered without inspection after being removed through the United States. But Defendant stated that he had recently obtained an Employment Authorization Card issued by the Department of Homeland Security. Defendant indicated that he applied for permanent resident status in the United States and received a receipt for the application. Subsequent investigation revealed Defendant's application had not been granted, making him illegally present in the United States.

Defendant admitted that he possessed multiple firearms, which he allowed the agents to inspect. Defendant possessed five firearms, and almost 500 rounds of assorted ammunition. The firearms were all manufactured outside of California and traveled in interstate commerce:

Remington, model 700, .30-06 rifle, serial number B6264511

| | |
|---|---|
| 1 | Colt, model Commander, .45 caliber pistol, serial number CJ27643 |
| 2 | Ruger, model Vaquero, .45 caliber revolver, serial number 58-29096 |
| 3 | Remington, model 700, .30-06 rifle, serial number  E6743201 |
| 4 | Winchester, model 70, .300 caliber rifle, serial number G312564 |

Defendant stated that he never transported or sold firearms in Mexico.  Defendant did not answer a question regarding selling firearms in the United States.  However, Defendant indicated that he liked to hunt and showed the agent his California hunting license, issued on September 13, 2007. Defendant said that he owned the three rifles for seven years, and that his father-in-law had purchased the rifles for him.  Defendant said the two handguns came from a friend that he had not seen for two years.  Defendant claimed that friend asked him to hold the firearms for him until the friend returned from Mexico.  Agents placed Defendant under arrest for violating 18 U.S.C. 922(g)(5), illegal alien in possession of firearms.

Subsequent investigation revealed that none of the five weapons Defendant possessed were legally purchased by him from a licensed firearms dealer.  Four of the firearms were purchased by four different people; the fifth (one of the Remington .30-06 rifles) has no record of a purchaser when traced through federal databases.

Agent Beals examined the weapons and determined that they were manufactured in Connecticut, New Hampshire, and New York.  This indicates that each of the five firearms in Defendant's possession traveled in interstate commerce.

Immigration and Customs Enforcement agents conducted an immigration investigation. They determined that Defendant was arrested twice previously for illegally entering the United States.  The first arrest took place at the San Ysidro port of entry on April 15, 1999.  On that occasion, Defendant  presented a false green card bearing someone else's name and alien number. During the secondary inspection process, Defendant admitted that he was not the rightful owner of the document, and that he lacked permission to lawfully enter the United States.  Defendant was expeditiously removed from the United States.  One week later, Defendant was arrested on April 22, 1999 by Border Patrol agents five miles east of the Tecate Port of Entry.  At that time, Defendant also lacked permission to enter the United States and was removed.

In April of 2007, Defendant filed an application for waiver of grounds of inadmissibility, known as an I-212 application. This application has yet to be adjudicated and the waiver has not been granted. Following the filing of that application, Defendant was issued an Employment Authorization card. This card is clearly labeled "not an entry document." Defendant was in possession of a temporary social security card that appears to have been issued on August 13, 2007. The social security card is stamped "valid for work only with DHS authorization."

Despite these cards, Defendant had no official permission to enter or reside in the United States. A check of Defendant's Alien file and immigration records indicates that Defendant was present in the United States illegally.

## II

## UNITED STATES' MOTIONS IN LIMINE

**A.    THE COURT SHOULD ADMIT A-FILE DOCUMENTS**

1.    A-File Documents are Admissible as Public Records or Business Records

The United States intends to offer documents maintained by the former Immigration and Nationalization Service and current Department of Homeland Security pertaining to Defendant. The agency maintains an "A-file" or "Alien-file" on Defendant, which contains documents reflecting most of Defendant's immigration encounters. The United States moves to introduce "A File" documents to establish Defendant's alienage, prior removal, and that he was subsequently found in the United States without having sought or obtained authorization from the Attorney General. The documents are self-authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6).

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola Dominguez, 125 F.3d 1315 (9th Cir. 1997). In Loyola Dominguez, the defendant appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from the illegal immigrant's "A File." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. Loyola Dominguez argued that admission of the

documents violated the rule against hearsay and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

Loyola-Dominguez is simply among the more recent restatements of the public-records and business-records rules. Courts in this Circuit have consistently held that documents from a defendant's immigration file are admissible in a § 1326 prosecution to establish the defendant's alienage and prior deportation. See United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence as absence of a public record); United States v. Sotelo, 109 F.3d 1446, 1449 (9th Cir. 1997) (holding warrant of deportation admissible to prove alienage); United States v. Contreras, 63 F.3d 852, 857 (9th Cir. 1995) (district court properly admitted warrant of deportation as public record); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record).

### 2. A Certificate of Non-existence Does not Violate the Confrontation Clause

The United States moves to introduce a Certificate of Non-existence of Record ("CNR"), prepared by an authorized official at the Department of Homeland Security and certifying that there are no records in any of the Department's databases, files, or archives that Defendant has ever applied for, or been granted, permission to reenter the United States following his deportation. The Ninth Circuit has held that a CNR is not "testimonial" within the meaning of Crawford v. Washington, 124 S. Ct. 1354 (2004) and therefore that its admission into evidence does not violate the Confrontation Clause of the United States Constitution. See United States v. Cervantes-Flores, 421 F.3d 825, 831-33 (9th Cir. 2005); Sotelo, 215 F.3d 1039, 1042-43.

**B.      THE COURT SHOULD ADMIT EXPERT TESTIMONY**

The United States moves to admit testimony of a firearms and ammunition expert to identify the five firearms obtained from Defendant and testify that they traveled in and affected interstate commerce. The United States provided notice of its intent to call Special Agent Matthew Beals as an expert and provided Defendant with a summary of Special Agent Beals' qualifications.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. See United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704. Here, the fingerprint expert's testimony will assist the triers-of-fact in determining whether the deportation and found-in evidence relate to the individual in the courtroom. Defendant has been provided notice of the United States' expert, his report of conclusions, and a copy of his curriculum vitae.

Because the evidence goes to the essential question traveling in and affecting interstate commerce, this expert testimony should be admitted.

Similarly, the government intends to admit testimony of a fingerprint examiner, Lisa Dimeo. The government provided notice of its intent to call Lisa Dimeo as an expert and provided Defendant with a summary of Ms. Dimeo's qualifications. Ms. Dimeo's testimony is expected to establish that Defendant is the same person who was arrested twice by border officials in April of 1999 and removed from the country. This testimony addresses the element of unlawful presence in the United States.

**D.  THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT REENTERED THE UNITED STATES**

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of <u>why</u> Defendant violated 18 U.S.C. § 922(g)(5), an element of which is that the Defendant is an illegal alien, is patently irrelevant to the question of <u>whether</u> he violated the statute -- the only material issue in this case. Rule 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. Here, the reason why Defendant reentered the United States, and his belief that he was justified in doing so, is irrelevant as to whether he violated 18 U.S.C. § 922(g)(5). Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is also irrelevant.

The case of <u>United States v. Komisaruk</u>, 885 F.2d 490 (9th Cir. 1980), is illustrative. Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. <u>Id.</u> at 491. On appeal, she argued that the district court erred in granting the government's motions *in limine* to preclude her from introducing her "political, religious, or moral beliefs" at trial. <u>Id.</u> at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. <u>Id.</u> at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," <u>id.</u> at 492, and the Ninth Circuit affirmed. Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.

**D.     THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY**

The Court should preclude Defendant from introducing evidence at trial of any former residence in the United States, legal or illegal. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993) overruled on other grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996), the district court granted the United States' motion *in limine* to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. The Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. Id.

Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the defendant filed a motion in limine to introduce evidence of what she termed "de facto" citizenship as an affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to introduce evidence of the involuntariness of her initial residence; her continuous residency since childhood; her fluency in the English language; and the legal residence of immediate family members. Id. at 712. The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." Id. The court also noted that admission of the evidence would run "contrary to the intent of Congress," because "the factors that [the defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." Id. Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries." Id. (emphasis added). Accordingly, evidence to residency, U.S. citizen children and spouses, U.S. employment, and difficulty of surviving in Mexico should be precluded.

E.  **MOTION TO EXCLUDE EVIDENCE AND ARGUMENT REFERRING TO DEFENDANT'S AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

"Evidence which is not relevant is not admissible," (Fed. R. Evid. 402), and the jury should "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." 9th Cir. Model Jury Instructions, § 3.1 (2003). Here, it is anticipated that Defendant may attempt to introduce evidence about his family circumstances or medical condition. This information is irrelevant to this case and should be excluded. Such evidence is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

Defense counsel may wish to mention Defendant's potential penalties to the jury. Information about penalty and punishment draws the attention of the jury away from their chief function as the sole judges of the facts, opens the door to compromise verdicts, and confuses the issues to be decided. See United States v. Olano, 62 F.3d 1180, 1202 (9th Cir. 1995); United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991). In federal court, the jury is not permitted to consider punishment in deciding whether the United States has proved its case against the defendant beyond a reasonable doubt. 9th Cir. Crim. Jury Instr. §7.4 (2003). Any such argument or reference would be an improper attempt to have the jury unduly influenced by sympathy for the defendant and prejudice against the United States.

The United States respectfully requests this Court to preclude any mention of possible penalty and/or felony designation at any point during the trial.

F.  **THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT**

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

### G. THE COURT SHOULD PRECLUDE ANY EXPERT TESTIMONY BY DEFENSE WITNESSES

The United States has requested reciprocal discovery. The United States is permitted to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof, within the possession or control of Defendant, which Defendant intends to introduce as evidence in his case-in-chief at trial or which were prepared by a witness whom Defendant intends to call at trial. Moreover, Defendant must disclose written summaries of testimony that Defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial. The summaries are to describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications. Defendant has provided neither notice of any expert witness, nor any reports by expert witnesses. Accordingly, Defendant should not be permitted to introduce any expert testimony.

If the Court determines that Defendant may introduce expert testimony, the United States requests a hearing to determine this expert's qualifications and relevance of the expert's testimony pursuant to Federal Rule of Evidence 702 and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999). See United States v. Rincon, 11 F.3d 922 (9th Cir. 1993) (affirming the district court's decision to not admit the defendant's proffered expert testimony because there had been no showing that the proposed testimony related to an area that was recognized as a science or that the proposed testimony would assist the jury in understanding the case); see also United States v. Hankey, 203 F.3d 1160, 1167 (9th Cir.), cert. denied, 530 U.S. 1268 (2000).

### H. THE COURT SHOULD ADMIT EVIDENCE OF DEFENDANT'S APPREHENSION AT THE BORDER IN 1999

An essential question for the jury to determine is whether Defendant was lawfully present in the United States when he possessed the five firearms. In order to understand why Defendant was barred from this country, evidence of Defendant's unlawful entry and subsequent removal in 1999 should be introduced. This evidence will not be as Defendant's character traits, but to show Defendant's identity as a previously-removed alien, and knowledge of immigration requirements,

and absence of mistaken belief that Defendant had permission to be in the country. Discovery related to Defendant's prior unlawful entries from April of 1999 has been provided.

The Ninth Circuit has adopted a four-part test to determine the admissibility of evidence under Rule 404(b). See United States v. Montgomery, 150 F.3d 983, 1000-01 (9th Cir. 1998). The trial court should consider the following: (1) the evidence of other crimes must tend to prove a material issue in the case; (2) the other crime must be similar to the offense charged; (3) proof of the other crime must be based on sufficient evidence; and (4) commission of the other crime must not be too remote in time. Id. In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test -- its probative value must not be substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. When the prior act is used to show Defendant's knowledge, the prior act need only "tend to make the existence of the defendant's knowledge more probable than it would be without the evidence." United States v. Ramirez-Jiminez, 967 F.2d at 1326. That standard is satisfied here as to Defendant's prior apprehension at the port of entry and subsequent removal from the United States..

**I.      THE COURT SHOULD PRECLUDE EVIDENCE OF DURESS AND NECESSITY**

A district court may preclude a necessity defense where "the evidence, as described in the defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992)(Internal quotation omitted.)

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1)     Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2)     Defendant had a well-grounded fear that the threat would be carried out; and

(3)     There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d 994, 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. 394, 416.

A defendant must establish the existence of four elements to be entitled to a necessity defense:

|   |   |   |
|---|---|---|
| 1 | (1) | that he was faced with a choice of evils and chose the lesser evil; |
| 2 | (2) | that he acted to prevent imminent harm; |
| 3 | (3) | that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and |
| 4 | (4) | that there was no other legal alternatives to violating the law. |

See Schoon, 971 F.2d 193, 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195 (Internal quotations omitted.)

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and an invitation for jury nullification that would result from such comments.

**K.     UNITED STATES' RENEWED MOTION FOR RECIPROCAL DISCOVERY**

The Court granted the United States' request for reciprocal discovery. As of the date of these motions, Defendant has produced no reciprocal discovery. The United States requests that Defendant comply with Rule 16(b) of the Federal Rules of Criminal Procedure, as well as Rule 26.2 which requires the production of prior statements of all witnesses, except for those of Defendant. Defendant has not provided the United States with any documents or statements. Accordingly, the United States intends to object at trial and ask this Court to suppress any evidence at trial which has not been provided to the United States.

**L.     UNITED STATES' MOTION TO PERMIT GOVERNMENT TO BRING FIREARMS INTO COURTHOUSE**

On July 18, 2008 the United States submitted a Motion to Permit the Government to Bring Firearms into the Courthouse. The Court has not yet ruled on the United States' request to bring the five firearms seized from the Defendant into the Courthouse. These firearms will be secured by required triggerlock safety devices at all times. The United States requests that the Court permit the government to bring these secured firearms into the Courthouse.

1  **M.  PRECLUDE DEFENDANT FROM ARGUING THAT AN APPLICATION TO ADJUST STATUS OR A EMPLOYMENT AUTHORIZATION DOCUMENT MAKES HIM A LAWFUL RESIDENT**

Defendant may attempt to argue that his temporary Employment Authorization Document and application for cancellation of removal and adjustment of status transform his illegal presence in the United States into lawful residency. As a matter of law, this argument has been rejected. In United States v. Latu, 479 F.3d 1153 (9th Cir. 2007), Latu overstayed his visa and filed a Form I-485 application for adjustment of status, after marrying a United States citizen. Latu was charged with illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). Id. at 1155. The Ninth Circuit upheld Latu's conviction on the 922(g)(5)(A) count and "decline[d] Latu's invitation to ... hold[] that Latu's presence in the United States is deemed lawful" merely because Latu had a pending application for adjustment of status. Id. at 1158. The opinion stated further, "we can envision no interpretation that renders Latu's presence anything than 'illegal or unlawful.'" Id. at 1159.

Similarly, the Tenth Circuit very recently upheld a conviction for violating 18 U.S.C. § 922(g)(5)(A) in United States v. Ochoa-Colchado, 521 F.3d 1292 (10th Cir. 2008). Ochoa was a citizen of Mexico who unlawfully entered the United States and was convicted of illegal entry, but was never physically removed from this country. Id. at 1293. Ochoa filed an application for cancellation of removal and adjustment of status, which was pending before an immigration judge during his criminal case. Id. Ochoa was also granted an employment authorization document that would allow him to work while residing in the United States. Id. Ochoa moved to dismiss the indictment, arguing that he was not in the United States illegally. The Tenth Circuit upheld the conviction, concluding "that Defendant, despite his filing of an application for adjustment of status and receipt of an [employment authorization document] was still 'illegally or unlawfully in the United States' for purposes of § 922(g)(5)(A)." Id. at 1298.

Other circuits have also suggested the same conclusion. See United States v. Bezargan, 992 F.2d 844, 848-49 (9th Cir. 1993); United States v. Lucio, 428 F.3d 519, 520 (5th Cir. 2005). Based upon the Latu and Ochoa decisions, the filing of an application to adjust status and receipt of a temporary employment authorization document do not render an alien's presence lawful.

1 | Based upon the <u>Latu</u> case, this Court should preclude Defendant from arguing that his
2 | presence in the United States was lawful, merely because he filed an I-212 application and was
3 | issued a temporary work authorization card. Legally, such an argument mis-states the law and
4 | should be prohibited.

### III

### CONCLUSION

For the foregoing reasons, the United States respectfully asks that the Court grant its motions.

DATED: July 28, 2008

          Respectfully submitted,

          KAREN P. HEWITT
          United States Attorney

          ***/s/ Christina M. McCall***

          CHRISTINA M. McCALL
          Assistant U.S. Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>         Plaintiff, <br>     v. <br> MIGUEL MENDIOLA-MARTINEZ, <br>         Defendant. | Case No. 08CR1169-WQH <br><br> **CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED that:

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' MOTIONS IN LIMINE on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1)    Genaro Lara
2)    Marcel Stewart

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 28, 2008.

                                            /s/ Christina M. McCall
                                            CHRISTINA M. McCALL