Law Office Of L. Marcel Stewart
L. Marcel Stewart
California Bar No. 250290
121 Broadway, Suite 349
San Diego, CA 92101
Telephone: (619) 702-4123
Facsimile: (619) 515-6336
Email:    lmslaw@att.net

Attorney for Mr. Mendiola-Martinez

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 08CR1169-WQH |
| Plaintiff, | TRIAL: August 11, 2008<br>TIME: 9:00 P.M. |
| v. | |
| MIGUEL MENDIOLA MARTINEZ, | **MIGUEL MENDIOLA'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTIONS AND MOTIONS <u>IN</u> <u>LIMINE</u>** |
| Defendant. | |

**I.**

**<u>STATEMENT OF FACTS</u>**

On or about April 2008, ATF agents went to Mr. Mendiola home based on an informants tip that he was an illegal alien, who has previously purchased guns from the informant. ATF agents questioned Mr. Mendiola about his immigration status and whether he possessed firearms. Agents learned that Mr. Mendiola possessed five guns , which he used for hunting. At the agents request Mr. Mendiola showed the agents the guns, which were stored in his garage. Agents seized the guns, took Mr. Mendiola into custody and charged him with being an Alien in Possession of a Firearm.

//

//

//

## II.

## MR. MENDIOLA'S RESPONSES IN OPPOSITION

A.  **A-file Documents**

    1.  **Mr. Hernandez-Chavez Does Not Object to the Admission of Relevant, Properly A-File Documents**

Mr. Mendiola does not oppose the admission of relevant, properly authenticated A-File documents under the public records or business exceptions to the hearsay rule. Thus, the motion in limine should be denied as moot.

    2.  **Admissibility of CNR**

Mr. Mendiola objects to the admission of a CNR as testimonial. However, he acknowledges Ninth Circuit caselaw to the contrary.

B.  **Government Offered Expert Testimony**

Mr. Mendiola objects to the admission of expert testimony of a firearms expert, because it will not aid the trier of fact. Expert testimony is only admissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Expert testimony is unnecessary if the jury is qualified without such testimony to determine the issue intelligently." Pool v. Dowdle, 834 F.2d 777, 781 (9th Cir. 1987) (citing State v. Chapple, 135 Ariz. 281, 292-93, (9th 1983)).

The Government has not demonstrated the need or usefulness of expert testimony from a firearms expert. Presumably, the Government wants to establish that the weapons involved are guns and they were manufactured outside of California. This factual evidence can be admitted by an agent testifying as a lay witness, because specialized knowledge is not required. Such evidence is not highly technical, complex nor sophisticated and, therefore, not beyond the understanding of average juror. Therefore, the only benefit of using an expert to introduce this type of evidence is the imprimatur accorded to "expert" testimony. Thus, the Government's motion in limine to admit the testimony of a firearms expert should be denied.

In contrast, Mr. Mendiola does not oppose expert fingerprint testimony by Lisa Dimeo, if such opinion is relevant.

**C.  Testimony About Why Mr. Mendiola Reentered the United States**

Because it would be difficult for the court to determine in advance of trial whether there exists any context in which testimony about why Mr. Mendiola reentered the country would be admissible, the Court reserve its ruling and address the issue at trial if necessary.

**D.  Testimony Regarding Prior Residency**

Testimony including Mr. Mendiola's prior residency may be relevant if its is intertwined with character testimony about Mr. Mendiola's reputation or specific instances of conduct within a community. Precluding any reference to prior residency could inhibit character witnesses' ability to provide context, which could cause awkward and incomplete testimony.

**E.  Testimony Regarding Mr. Mendiola's Age, Finances, Education and Potential Punishment**

Mr. Mendiola does not intend to offer testimony on these issues. Nevertheless, it is possible that testimony regarding age, finances or education may be intertwined with character evidence. Accordingly, Mr. Mendiola request that the court reserve its ruling and address the issue at trial if necessary.

**F.  Exclusion of Witnesses**

Mr. Mendiola does not oppose the exclusion of <u>all</u> witnesses, except Mr. Mendiola and the case agent.

**G.  Defense Expert**

Mr. Mendiola does not intend to offer expert testimony. Thus, the motion <u>in</u> <u>limine</u> should be denied as moot.

**H.  Evidence of the Defendant's Prior Apprehensions At The Border**

The Government should not be allowed to introduce evidence of arrests. Evidence of arrests are irrelevant and highly prejudicial. The fact that Mr. Mendiola was arrested by immigration authorities has little, if any, probative value, because the fact that he was arrested does not prove his alienage. Instead, any statements he made regarding alienage, orders of deportation and deportation are much more probative of his alienage than the fact he was arrested by immigration authorities on two occasion. In actuality, the prior arrests are other act evidence that do not qualify for admission under Rule 404(b). Furthermore, the Government has not noticed intent to offer other act evidence

1  under Rule 404(b).

2  Additionally, it would be cumulative for the Government to offer evidence of multiple
3  deportations. Unlike with 1326 cases, deportation is not an element of the 922(g)(5) charge.
4  Thus, multiple deportations can be prejudicial, particularly given that deportations should not
5  dominate an alienage determination. Therefore, the Government should only be allowed to introduce
6  evidence of one deportation, without reference to Mr. Mendiola being arrested.

7  **I.    Duress or Necessity Defenses**

8  Mr. Mendiola does not intend to offer Duress or Necessity defenses. Thus, the motion in
9  limine should be denied as moot.

10 **K.    United States' Renewed Motion for Reciprocal Discovery**

11 Mr. Mendiola is aware of his discovery obligations, but does believe that he has any
12 discovery, not already in the Government's possession. Nevertheless, Mr. Mendiola will discover
13 any immigration documents obtained from Mr. Mendiola's wife that were not provided in the
14 Government's discovery.

15 **L.    Government's Motion to Bring Firearms Into The Courthouse**

16 Mr. Mendiola opposes the Government's motion to display five firearms before the jury
17 throughout the trial, because "[r]ightly or wrongly, many people view weapons, especially guns,
18 with fear and distrust." U.S. v. Hitt, 981 F.2d 422 (1992). There is a clear risk that displaying
19 several guns before the jury may have a highly prejudicial, visceral impact. Subtle fear and
20 prejudices of guns and those who own them could predispose the jury to convict Mr. Mendiola. Mr.
21 Mendiola is willing to stipulate that he was found in possession of the five guns in question and that
22 they were made out of state to avoid potential prejudice that may result from displaying the guns
23 before the jury. Accordingly, the Court should deny the government's motion.

24 **M.    Mr. Mendiola Should Be Allowed to Argue That He Is Not Illegally Present Because
        of His Pending Adjustment of Status Application and His Government Issued
25      Employment Authorization, Social Security Card and Drivers License**

26 The Government erroneously contends that the Ninth Circuit has rejected the argument that
27 an unlawful alien who has filed an adjustment of status can become a lawful alien during the
28 pendency of the application. See Gov. MIL at 13. The Government cites United States v. Latu, 479

1  F.3d 1153 (9th Cir. 2007) for this proposition. However, as explained below, the Government
2  overstates the Ninth Circuit's ruling in Latu.
3       In Latu, the Defendant, an alien who had overstayed his visa, was charged with being an
4  alien in possession of a firearm. Among other things, Latu argued that he was not illegally in the
5  United States, because he filed an application for adjustment of status and was allowed to remain
6  within the United States during the pendency of his application. Id. at 1155. Relying on ATF
7  regulations for the definition of "illegally or unlawfully present," which expressly enumerates a
8  nonimmigrant and whose authorized period of stay has expired, the Court concluded that Latu was
9  illegally or unlawfully present in the United States. The Court reasoned that Latu necessarily met
10 the literal definition of illegally or unlawfully in the United States, because he had overstayed the
11 period authorized in his Visa. Id. (citing 27 C.F.R. § 478.11). Upon concluding that Latu fell within
12 the enumerated definition for illegally or unlawful, the Court *expressly* declined to decide the
13 broader issue of whether an alien who has acquired unlawful status or illegal status by illegally
14 crossing the border without admission or parole can become lawful while his application for
15 adjustment of status is pending. See Latu, 479 F.3d at 1158, FN. 2 (citation omitted).
16      Significantly, however, the Ninth Circuit stated:

> This regulation of course does not necessarily foreclose Latu's argument that
> although he was unlawfully in the United States, his presence once again became
> lawful when he applied for adjustment of status. However, absent a statute
> preventing Latu's removability upon filing of his application for adjustment of
> status, we can envision no interpretation that renders Latu's presence anything other
> than 'illegal[] or unlawful[].'

Latu, 479 F.3d at 1159.

     Thus, rather than conclude that filing an application for adjustment of status cannot change an alien's status from unlawful to lawful, the Ninth Circuit stated that such a determination could term on whether the alien could demonstrate that he was precluded from removal during the pendency of his adjustment of status application, as is the case here. Because Mr. Mendiola's petition for adjustment of status (I-485) was filed under INA 245(i), which requires among other things that the alien be immediately eligible for a Visa, he is not subject to removal while his application is pending.

<u>United States. v. Revuelta</u>, 109 F.Supp.2d 1170 (N.D.Cal. 2000) is instructive on this issue. There, the Court determined that an alien was not illegally or unlawfully in the country during the pendency of his I-485 Petition for Adjustment of Status if INS Operating Instruction Section 242.1a(23) applied. In relevant part, OI 242.1a(23) states:

> OI 245.1(a) before issuing an order to show cause against an alien who may be eligible for adjustment of status pending final adjudication of a petition which has been filed, **the district director will not deport, or institute proceedings against**, the beneficiary of the petition if approval of the petition would make the beneficiary immediately eligible for adjustment of status under § 245 of the Act...

<u>U.S. v. Revuelta</u>, 109 F.Supp.2d 1170 (N.D.Cal. 2000) (citing INS IO 242.1a(23)) (emphasis added).

Accordingly, Mr. Mendiola's petition for adjustment of status filed under INA 245(i), employment authorization, social security number and driver's license are considered in light of OI 242a(1) and <u>Latu</u>'s rationale, it would be error to preclude Mr. Mendiola from presenting evidence supporting his defense that he was not illegally or unlawfully in the United States for purposes of the charged crime.

### III.
### CONCLUSION

For the foregoing reasons, Mr. Mendiola respectfully requests the aforementioned rulings

Dated: August 5, 2008

>                                 /s/ L. Marcel Stewart
>                                 L. MARCEL STEWART
>                                 Co-counsel for Mr. Mendiola