KAREN P. HEWITT
United States Attorney
CHRISTINA M. McCALL
Assistant U.S. Attorney
California State Bar No. 234139
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6760

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MIGUEL MENDIOLA-MARTINEZ, <br><br> Defendant | Criminal Case No. 08CR1169-WQH <br><br> Date: September 15, 2008 <br> Time: 9:00 a.m. <br><br> **GOVERNMENT'S SUPPLEMENTAL BRIEF ADDRESSING MOTION IN LIMINE TO PRECLUDE INTRODUCTION OF APPLICATION TO ADJUST STATUS AND EMPLOYMENT AUTHORIZATION CARD** |

Plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Christina McCall, Assistant United States Attorney, hereby files its Supplemental Brief on the topic of precluding introduction of Defendant Miguel Mendiola-Martinez's application to adjust status and temporary employment authorization card. Furthermore, the United States moves to preclude defense counsel from arguing that these two documents transform Defendant from an alien from unlawful status, based upon entry without inspection, to lawful status. This briefing is based upon the files and records of this case, together with the attached Statement of Facts and Memorandum of Points and Authorities.

//

//

# I

# STATEMENT OF FACTS

**A.    Defendant's Arrest**

On April 9, 2007, Special Agent Matt Beals of the Bureau of Alcohol, Tobacco and Firearms ("ATF") debriefed a confidential informant about firearms possessed by Defendant, Miguel Mendiola-Martinez. The informant stated that Defendant had purchased at least two firearms from the informant in the past 18 months. The informant identified Defendant from his photograph from the California Department of Motor Vehicles driver's license database. A check of Defendant's criminal and immigration history revealed that he was arrested by the Immigration and Naturalization Service for attempted illegal entry into the United States on April 15, 1999, and expeditiously removed from the country. A check of immigration records revealed that Defendant did not have lawful permission to reenter the United States following his removal.

On March 17, 2008, ATF and Immigration and Customs Enforcement agents interviewed Defendant at his residence, after Defendant waived his Miranda rights. Defendant confirmed that he was unlawfully present in the United States, having illegally entered without inspection after being removed through the United States. But Defendant stated that he had recently obtained an Employment Authorization Card issued by the Department of Homeland Security. Defendant indicated that he applied for permanent resident status in the United States and received a receipt for the application. Subsequent investigation revealed Defendant's application had not been granted, making him illegally present in the United States.

Defendant admitted that he possessed multiple firearms, which he allowed the agents to inspect. Defendant possessed five firearms, and almost 500 rounds of assorted ammunition. The firearms were all manufactured outside of California and traveled in interstate commerce:

Remington, model 700, .30-06 rifle, serial number B6264511

Colt, model Commander, .45 caliber pistol, serial number CJ27643

Ruger, model Vaquero, .45 caliber revolver, serial number 58-29096

Remington, model 700, .30-06 rifle, serial number  E6743201

1           Winchester, model 70, .300 caliber rifle, serial number G312564

2           Defendant stated that he never transported or sold firearms in Mexico. Defendant did not answer a question regarding selling firearms in the United States. However, Defendant indicated that he liked to hunt and showed the agent his California hunting license, issued on September 13, 2007. Defendant said that he owned the three rifles for seven years, and that his father-in-law had purchased the rifles for him. Defendant said the two handguns came from a friend that he had not seen for two years. Defendant claimed that friend asked him to hold the firearms for him until the friend returned from Mexico. Agents placed Defendant under arrest for violating 18 U.S.C. 922(g)(5), illegal alien in possession of firearms.

**B.    Subsequent Investigation**

Subsequent investigation revealed that <u>none</u> of the five weapons Defendant possessed were legally purchased by him from a licensed firearms dealer. Four of the firearms were purchased by four different people; the fifth (one of the Remington .30-06 rifles) has no record of a purchaser when traced through federal databases.

Agent Beals examined the weapons and determined that they were manufactured in Connecticut, New Hampshire, and New York. This indicates that each of the five firearms in Defendant's possession traveled in interstate commerce.

Immigration and Customs Enforcement agents conducted an immigration investigation. They determined that Defendant was arrested twice previously for illegally entering the United States. The first arrest took place at the San Ysidro port of entry on April 15, 1999. On that occasion, Defendant presented a false green card bearing someone else's name and alien number. During the secondary inspection process, Defendant admitted that he was not the rightful owner of the document, and that he lacked permission to lawfully enter the United States. Defendant was expeditiously removed from the United States. One week later, Defendant was arrested on April 22, 1999 by Border Patrol agents five miles east of the Tecate Port of Entry. At that time, Defendant also lacked permission to enter the United States and was removed.

In April of 2007, Defendant filed an application for waiver of grounds of inadmissibility, known as an I-212 application for permission to reapply for admission into the United States after deportation or removal. This application has yet to be adjudicated and the waiver has not been granted. Defendant also filed an application to adjust his status to that of a lawful resident, on the basis of his marriage to a United States citizen. The application to adjust status has similarly not been adjudicated or granted. Following the filing of that application, Defendant was issued an Employment Authorization card. This card is clearly labeled "not an entry document." Defendant was in possession of a temporary social security card that appears to have been issued on August 13, 2007. The social security card is stamped "valid for work only with DHS authorization."

Despite these cards, Defendant had no official permission to enter or reside in the United States. Investigation of Defendant's Alien file and immigration records indicates that Defendant was present in the United States illegally. Defendant entered without inspection or approval following his 1999 removal, making him unlawfully present in this country. Defendant's own application to adjust status contains several admissions about his unlawful status. [Exhibit 1, Supplement to Form I-485.]

## II

## ARGUMENT

**A.    Introduction**

The United States moves to preclude the introduction of Defendant's employment authorization card and application to adjust status to a lawful resident. These documents are irrelevant to the question of whether Defendant was illegally or unlawfully present in the United States, and seriously risk confusing the jury.

**B.    Defendant Was Unlawfully Present in the United States**

The statute that Defendant is charged with violating, 18 U.S.C. § 922(g)(5)(A), does not define the term "illegally or unlawfully in the United States." "The legislative history [of section 922(g)(5)(A)] is similarly silent" on the definition of what constitutes illegal or unlawful presence in the United States. United States v. Lopez-Perera, 438 F.3d 932, 934 (9th Cir. 2006). The agency charged with administering section 922, ATF, has promulgated a regulation that includes a definition of an alien

1  illegally or unlawfully in the United States. See 27 C.F.R. § 478.11. [Exhibit 2.] The relevant portion
2  of the ATF's definition provides: "Aliens who are unlawfully in the United States are not in valid
3  immigrant, nonimmigrant or parole status. The term includes any alien--(a) who unlawfully entered the
4  United States without inspection and authorization by an immigration officer and who has not been
5  paroled into the United States...." Both Lopez-Perera, 438 F.3d 932, and United States v. Ochoa-
6  Colchado, 541 F.3d 1292 (10th Cir., 2008) recognize that 27 C.F.R. § 478.11 is the starting point for
7  analyzing the meaning of the phrase "illegally or unlawfully in the United States."

8       Defendant has never been lawfully admitted to the United States. Records show that Defendant
9  was arrested twice in 1999, illegally crossing the border without inspection, and physically removed
10 from the country. On one of those occasions, Defendant presented a false identification and was
11 expeditiously removed. Because of that 1999 incident, Defendant was inadmissible to the United States.
12 Defendant's own application to adjust status admits that he was "in unlawful immigration status because
13 [he] entered the United States without inspection or remained in the United States past the expiration
14 of the period of my lawful admission." [Exhibit 1.]

15 **C.**  **Defendant is Removable, Despite Filing the Application to Adjust Status**

16      Because Defendant entered without inspection, he is removable under 8 U.S.C. §
17 1182(a)(6)(A)(i), which provides: "An alien present in the United States without being admitted or
18 paroled, or who arrives in the United States at any time or place other than as designated by the Attorney
19 General, is inadmissible." [Exhibit 3.] An applicant's status is still "unlawful" until his application for
20 admission or adjustment of status is adjudicated and it is determined that he is "admissible" and is
21 "admitted," as that term is defined in the INA. "The terms 'admission' and 'admitted' mean, with respect
22 to an alien, the lawful entry of the alien into the United States after inspection and authorization by an
23 immigration officer." 8 U.S.C. §1101(a)(13)(A). [Exhibit 4.]

24      Defendant cites United States v. Revuelta, 109 F.Supp.2d 1170 (N.D. Cal. 2000), for the
25 proposition that he is not removable, solely because he filed an application to adjust status. This is a
26 mis-interpretation of Revuelta. In that case, Revuelta moved to dismiss the section 922(g)(5) charges
27 against him, arguing that filing a form I-485 application to adjust status based upon marriage to a United
28

States citizen made him not an illegal alien. The district court denied Revuelta's motion to dismiss the charge, not finding Revuelta's arguments persuasive. The district court in <u>Revuelta</u> considered now-defunct INS operating instructions that are completely irrelevant to this case. The INS ceased to exist on March 1, 2003, and Defendant is clearly removable on the basis of 8 U.S.C. § 1182(a)(6)(A)(i), entry without inspection. Defendant's attempt to twist <u>Revuelta</u> into some sort of bar to removal fails.

**D.    Possession of a Temporary Work Authorization Card and Application for Residency <u>Do Not</u> Equal Lawful Status**

Defendant received an employment authorization document under 8 C.F.R. § 241a.12(c)(9). That provision of the C.F.R. allows certain aliens to receive employment authorization while their applications are pending. It does not grant any legal status, whatsoever, to the applicant.

Defendant may attempt to argue that his temporary Employment Authorization Document and application for cancellation of removal and adjustment of status transform his illegal presence in the United States into lawful residency. As a matter of law, this argument has been rejected.

In <u>United States v. Latu</u>, 479 F.3d 1153 (9th Cir. 2007), Latu overstayed his visa and filed a Form I-485 application for adjustment of status, after marrying a United States citizen. Latu was charged with illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(5)(A). <u>Id.</u> at 1155. The Ninth Circuit upheld Latu's conviction on the 922(g)(5)(A) count and "decline[d] Latu's invitation to ... hold[] that Latu's presence in the United States is deemed lawful" merely because Latu had a pending application for adjustment of status. <u>Id.</u> at 1158. The opinion stated further, "absent a statute preventing Latu's removability upon filing of his application for adjustment of status, we can envision no interpretation that renders Latu's presence anything than 'illegal or unlawful.'" <u>Id.</u> at 1159.

Defendant can point to no statute that prevents his removability, because none exists. The whole purpose of the adjustment of status process is to determine whether an alien is inadmissible or removable for any reason. DHS could, in theory, issue an employment authorization to Osama Bin Laden if he applied for adjustment of status on the basis of a marriage to a United States citizen. Once DHS discovered he was inadmissible as a terrorist, however, DHS would deny his application and put him in removal proceedings. DHS would never admit Bin Laden, and he would never have any lawful status.

1   Just because Defendant filed an application to adjust his status, his presence would not be lawful until
2   the application was granted, which it has not been.

3       Similarly, the Tenth Circuit very recently upheld a conviction for violating 18 U.S.C. §
4   922(g)(5)(A) in United States v. Ochoa-Colchado, 521 F.3d 1292 (10th Cir. 2008). Ochoa was a citizen
5   of Mexico who unlawfully entered the United States and was convicted of illegal entry, but was never
6   physically removed from this country. Id. at 1293. Ochoa filed an application for cancellation of
7   removal and adjustment of status, which was pending before an immigration judge during his criminal
8   case. Id. Like Defendant, Ochoa was also granted an employment authorization document that would
9   allow him to work while residing in the United States. Id. Ochoa moved to dismiss the indictment,
10  arguing that he was not in the United States illegally. The Tenth Circuit upheld the conviction,
11  concluding "that Defendant, despite his filing of an application for adjustment of status and receipt of
12  an [employment authorization document] was still 'illegally or unlawfully in the United States' for
13  purposes of § 922(g)(5)(A)." Id. at 1298.

14      Other circuits have also suggested the same conclusion. See United States v. Bezargan, 992 F.2d
15  844, 848-49 (9th Cir. 1993); United States v. Lucio, 428 F.3d 519, 520 (5th Cir. 2005). Based upon the
16  Latu and Ochoa decisions, the filing of an application to adjust status and receipt of a temporary
17  employment authorization document do not render an alien's presence lawful.

18                                    **III**
19                                **CONCLUSION**

20      For the reasons detailed above, Defendant should be precluded from introducing evidence of his
21  employment authorization card and application to adjust status, and arguing that those two documents
22  make his presence in this country lawful.

23      DATED: August 19, 2008                    Respectfully submitted,

24                                                KAREN P. HEWITT
                                                  United States Attorney
25
                                                  /s/ ***Christina M. McCall***
26
                                                  CHRISTINA M. McCALL
27                                                Assistant U.S. Attorney

28

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MIGUEL MENDIOLA-MARTINEZ, ) <br> ) <br> Defendant. ) | Criminal Case No. 08CR1169-WQH <br><br> CERTIFICATE OF SERVICE |

**IT IS HEREBY CERTIFIED that:**

I, CHRISTINA M. McCALL, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' SUPPLEMENTAL BRIEF** on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Genaro Lara
Marcel Stewart

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 19, 2008

                                                  /s/ ***Christina M. McCall***
                                                  CHRISTINA M. McCALL